## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **VERLIE ANN HEBERT** | * | **CIVIL ACTION NO. 09-1905** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Verlie Ann Hebert, born November 18, 1956, filed an application for supplemental security income on August 17, 2007, alleging disability as of July 1, 2003, due to headaches, fatigue, blurred vision, dizziness, and heart problems.

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Paul Gulotta, Jr. dated March 14-15, 2007**.

Claimant was admitted to the hospital for chest discomfort and shortness of breath. (Tr. 126). She had a stent placed in her right coronary artery approximately six years earlier. She was undergoing a divorce and had been under a great deal of emotional distress. She had smoked one-half to one pack of cigarettes per day for 40 years. (Tr. 127, 129).

On chest examination, claimant wheezed bilaterally to auscultation. (Tr. 127). Nuclear stress testing demonstrated an LVEF of 70% with no ischemia and no scar. (Tr. 123, 133). Pulmonary function testing showed an FEV1 of 63% of predicted and an FVC of 66% of predicted. This did not improve with bronchodilators. Diffusion capacity was 70% of predicted.

Claimant had wheezing throughout her hospital stay. She stated that her Advair had been of questionable benefit, but also stated that she had not taken it for several days. Dr. Gulotta questioned her compliance.

Additionally, claimant reported ankle pain, and was asking for pain medication. (Tr. 124). Dr. Gullota noted that she was ambulating without

limping, and that there appeared to be only a mild degree of discomfort based on

his observation of her ambulation.  He reassured her that time would help more

than anything, and agreed with Dr. Sagrera not to start narcotics for this complaint.

Dr. Gulotta's impression was mild to moderate obstructive airway disease,

no bronchodilator response, and mild gas exchange impairment.  (Tr. 129).  His

diagnoses were non-cardiac chest pain likely due to a combination of anxiety and

esophagitis, dyspnea due to chronic obstructive pulmonary disease, asthma, and

anxiety.  (Tr. 123-125).  Claimant was instructed to stop smoking.  (Tr. 125).

**(2) Records from Dr. Theodore Knatt dated March 1, 2007 to July 23,**

**2007**.  On March 1, 2007, claimant was seen for left ankle pain.  (Tr. 159).  An

MRI showed a partial tear of the peroneous longus tendon.  (Tr. 170).  Dr. Knatt

performed a left peroneal longus tendon repair on April 18, 2007.  (Tr. 172).

Post-procedure, claimant was doing well.  (Tr. 155-56).  She was prescribed

physical therapy.  (Tr. 201-229).[1]

On June 25, 2007, claimant complained of left foot paresthesia and lumbar

pain.  (Tr. 154).  On physical examination, she had decreased sensation in the L3-

L4 dermatomal distribution, but was otherwise neurovascularly intact.  X-rays of

---

[1]Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(d) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

the lumbar spine showed some evidence of lumbar spondylosis.  The impression was left ankle synovitis and lumbar spondylosis.

An MRI of the lumbar spine dated July 11, 2007, showed spondylosis at L4-L5 with no evidence of stenosis, and bilateral pars defects of L5 with no evidence of spondylolisthesis.  (Tr. 160).

On July 23, 2007, claimant reported having a fall 13 days prior and injuring her left ankle.  (Tr. 153).  X-rays revealed no obvious abnormality.  She had good range of motion and strength within the left foot.  The assessment was left ankle synovitis and left anterior talar fibula ligament sprain.

**(3) Consultative Examination by Dr. Jodi Layton dated November 10, 2007**.  Claimant complained of back and knee pain, blurred vision, dizziness, heart problems, COPD, high blood pressure, and chest pain.  (Tr. 173).  She smoked a pack of cigarettes a day.

Claimant was able to dress and feed herself, stand for five minutes at a time for a total of a half hour, walk approximately 20 feet on level ground, sit for 10 to 15 minutes at a time, lift approximately 10 pounds, drive up to 15 minutes, do household chores including sweeping, mopping, vacuuming, cooking, doing dishes, and shopping.  (Tr. 173-74).  However, she was unable to climb stairs and mow grass due to back, knee, and ankle problems.  (Tr. 174).  Her medications

included isosorbide mononitrate, hydrochlorothiazide, trazodone, clonazepam, Advair, Vitorin, Protonix, enalapril, Bayer, Seroquel, and Detrol.

Claimant denied wheezing; however, she used to smoke a pack of cigarettes a day.  On examination, she was 62 inches tall and weighed 148.5 pounds.  Her blood pressure was 180/110.  She had not taken her medication prior to her visit.

Claimant was able to ambulate without assistance devices.  (Tr. 175).  She was able to get on and off the exam table, and up and out of the chair.  She could dress and undress herself without difficulty.

Claimant's vision was 20/25 in the right eye and 20/25 in the left with corrective glasses.  She had end-expiratory wheezes bilaterally in her upper lung fields, which did not clear with coughing.  Her heart had regular rate and rhythm, with no murmurs, rubs, or gallops.

On spine exam, claimant had no muscle tenderness or edema.  Her peripheral pulses were 2+.  Gait was normal.  Her grip was 5/5 and her gross manipulation skills were normal.

Claimant's range of motion in her spine and extremities was normal.  Her ankle range of motion was also normal.  Straight leg raising was 70 degrees bilaterally with a positive straight leg raise sign.

At her left knee, claimant had a large osteophyte without impairment of range of motion.  She declined to walk on her heel and toes, and was unable to squat and do her heel-to-toe walk.

Neurologically, claimant's motor function was 4/5 in all extremities.  (Tr. 176).  She had no evidence of atrophy.  Sensory exam was intact.  Cranial nerves were grossly intact.  Deep tendon reflexes were 2+ and symmetric.

Dr. Layton's impression was back and neck pain, with claimant exhibiting some decreased range of motion and positive objective findings on her physical exam for chronic lower back pain and chronic osteoarthritis of her left knee.  She was able to ambulate without any assistive device, but these issues did limit her functional capacity to a light-to-medium work range.

Additionally, Dr. Layton noted that claimant had a known history of coronary artery disease, uncontrolled hypertension with some medication noncompliance, and wheezing on exam and PFTs consistent with her diagnosis of COPD.  Dr. Layton opined that claimant would benefit from taking her medications for hypertension and COPD on a regular basis and quitting smoking. She had minimal evidence of end organ disease from multiple medical problems with her history of coronary artery disease.

**(4) Residual Functional Capacity Assessment dated November 20, 2007**.

The medical consultant found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 180).  She could stand, walk, and sit about six hours in an eight-hour workday.  She had unlimited push/pull ability.

Claimant could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.  (Tr. 181).  She could never climb ladders, ropes, or scaffolds.

**(5) Records from Dr. Gulotta dated October 2, 2007 to November 6, 2008**.  On October 2, 2007, claimant had no chest pain, occasional palpitations, and shortness of breath.  (Tr. 189).  Her blood pressure was 170/100, and her weight was 144 pounds.  The assessment was non-cardiac chest pain (anxiety and esophagitis), native vessel CAD, post right coronary stenting, COPD and asthma, a history of gastritis, current smoker, hypercholesterolemia, and hypertension.

On April 8, 2008, claimant was seen for chest pain, occasional palpitations, and shortness of breath.  (Tr. 192).  Her blood pressure was 120/78, and her weight was 159 pounds.  The assessment was CAD with stent, now with angina; COPD and asthma, a history of gastritis, smoker, increased cholesterol, anxiety, and hypertension.

**(6) Records from Dr. G. D. Sagrera dated October 8, 2007 to January 19, 2009**.  Claimant was seen for back pain, anxiety, bronchitis, depression, and

insomnia.  (Tr. 195-98).  She was a smoker.  (Tr. 197-98).

(7) Claimant's Administrative Hearing Testimony.  At the hearing on

January 28, 2009, claimant testified that she had stopped going to school in the

seventh grade.  (Tr. 39).  She had worked as a cashier from 2003 through 2005.

(Tr. 26).  She had a driver's license.  (Tr. 28).

Regarding complaints, claimant testified that she had problems with her

lower back and shortness of breath.  (Tr. 29).  She was not taking any medications

for her back.  She said that she had cut down on her smoking.  Additionally, she

had ankle pain, knee problems, heart problems, and tingling in her left hand.  (Tr.

32, 33, 36, 39).

As to limitations, claimant reported that she could stand for five to 10

minutes before having back pain, then had to rest 10 to 15 minutes.  (Tr. 30).  She

said that she had problems sleeping.  (Tr. 31).

Regarding activities, claimant testified that she went to her daughter's house

down the road to visit.  (Tr. 31).  She stated that she did not have a social life.  (Tr.

32).

(8) Administrative Hearing Testimony of William M. Stampley, Jr.,

Vocational Expert ("VE").  The ALJ posed a hypothetical in which he asked Mr.

Stampley to assume a claimant who had no past relevant work and had the residual

functional capacity assigned by the state agency examiner for light work reduced

by the requirement that she could not climb ladders or scaffolds and was limited to

postural activities on an occasional basis.  (Tr. 26-27).  In response, the VE

testified that such claimant could work as a small products assembler, of which

there 3,880 positions statewide and 387,655 nationally, and laundry bagger, of

which there were 1,464 positions statewide and 225,406 nationally.  (Tr. 27).

    **(9) The ALJ's findings are entitled to deference**.  Claimant argues that:

(1) the weight of the evidence does not support an exertional level greater than

sedentary, and (2) the ALJ erred in failing to include her non-exertional limitations

of depression and emphysema in the hypothetical to the vocational expert.

First, claimant argues that the ALJ did not make appropriate use of the

vocational expert.  [rec. doc. 12, p. 3].  Specifically, she asserts that it was error for

the ALJ to have failed to include her age, education, and prior work experience in

the hypothetical question.  [rec. doc. 12, p. 4].  However, she then states that "it

may be possible that the vocational expert gleaned that information he may have

received prior to the hearing."

The transcript of the hearing indicates that the vocational expert was present

during the entire hearing.  (Tr. 22-42).  Although the ALJ did not specifically

include claimant's age, education, and prior work experience in the hypothetical,

the record reflects that the ALJ directed Mr. Stampley to the residual functional

capacity assessment from the state agency examiner, which included her

limitations to light work reduced by the requirement that she could not climb

ladders or scaffolds and was limited to postural activities on an occasional basis.

(Tr. 26-27).  Accordingly, this argument lacks merit.

Next, claimant argues that the ALJ erred in failing to include her non-

exertional limitations of depression and respiratory problems in the hypothetical to

the vocational expert.  [rec. doc. 12, pp. 5-6].  As to claimant's depression, the

record reflects only one notation for depression while she was going through her

divorce.  (Tr. 195).  There is no indication that claimant sought treatment for

depression from a mental health professional.

A review of the decision shows that the ALJ specifically analyzed

claimant's complaint of depression, finding that it was not a severe impairment.

(Tr. 17).  As the ALJ's hypothetical to the vocational expert reasonably

incorporated all disabilities of the claimant *recognized by the ALJ*, and the

claimant or her representative had the opportunity to correct deficiencies in the

ALJ's question, the ALJ's findings are entitled to deference.  (emphasis added).

*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431,

436 (5th Cir. 1994).

As to the claims of respiratory problems, the record reflects that claimant

had a long history of smoking one-half to two packs per day.  (Tr. 125, 127, 129,

173, 189).   Despite her physicians' repeated admonitions to stop smoking, she did

not.  (Tr. 30).  Additionally, Dr. Gullota questioned her compliance with Advair.

(Tr. 123).  It is well established that failure to follow prescribed medical treatment

precludes an award of benefits.  20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*,

894 F.2d 683, 685, n. 4 (5th Cir. 1990).  Thus, this argument lacks merit.

Finally, claimant argues that the record does not support the finding that she

could perform light work.  [rec. doc. 12, p. 6].  Specifically, she asserts that her

orthopedic problems, coronary artery disease, and uncontrolled hypertension

preclude her from performing light work.  [rec. doc. 12, p. 9].

Regarding claimant's orthopedic problems, an MRI of the lumbar spine

dated July 11, 2007, showed spondylosis at L4-L5 with no evidence of stenosis,

and bilateral pars defects of L5 with no evidence of spondylolisthesis.  (Tr. 160).

Her treating physician, Dr. Gullota, noted that she was ambulating without

limping, and that there appeared to be only a mild degree of discomfort based on

his observation of her ambulation.  (Tr. 124).

Another treating physician, Dr. Knatt, found that she had a good post-

surgical result from her ankle injury.  (Tr. 155-56).  Although claimant

11

subsequently fell and injured her left ankle, x-rays revealed no obvious abnormality and claimant had good range of motion and strength within the left foot.  (Tr. 153).

Regarding claimant's coronary artery disease and hypertension, Dr. Layton noted that claimant had a known history of CAD and uncontrolled hypertension with some medication noncompliance.  (Tr. 176).  On the day of her examination, she had not taken her blood pressure medication.  (Tr. 174).  Dr. Layton opined that claimant would benefit from taking her medications on a regular basis and quitting smoking.  (Tr. 176).  It bears repeating that failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 416.930(a), (b); *Johnson*, 894 F.2d at 685, n. 4.

Additionally, the records show that claimant had *minimal* evidence of end organ disease from multiple medical problems with her history of coronary artery disease.  (emphasis added).  (Tr. 176).  Further, none of claimant's treating or consulting physicians had indicated that her physical impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5ᵗʰ Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled).

In conclusion, the ALJ's decision that claimant could perform light work is supported by the evidence.  Dr. Layton opined that claimant could work at a light-to-medium work range.  (Tr. 176).  Additionally, the state agency consultant found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit about six hours in an eight-hour workday; had unlimited push/pull ability, and could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but never climb ladders, ropes, or scaffolds.  (Tr. 180-81).  As the ALJ's finding that claimant could perform light work is supported by the medical evidence, it is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed April 11, 2011, at Lafayette, Louisiana.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE